AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
12/21/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DTA DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
Dec 21, 2021
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY: Nancy Boehme
Deputy Clerk, U.S. District Court

United States of America

v.

GERALD ADAM ROYSTER,

Defendant.

Case No. 8:21-mj-00837-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of December 1, 2021 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm and ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Farshid Hashempour, Task Force Officer
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: December 21, 2021

**DOUGLAS F. McCORMICK**
Judge's signature

City and state: Santa Ana, California

Hon. Douglas F. McCormick, US Magistrate Judge
Printed name and title

AUSA: Faraz Mohammadi (714-338-3599)

**A F F I D A V I T**

I, Farshid Hashempour, being duly sworn, hereby declare and state as follows:

## I. INTRODUCTION

1. I am a Detective with the Santa Ana Police Department ("SAPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Federal Bureau of Investigation ("FBI").

2. I am assigned to the Orange County Violent Gang Task Force ("OCVGTF"). The OCVGTF is composed of federal and local law enforcement agencies, including, but not limited to, the FBI, the SAPD, and detectives from the Anaheim Police Department. The OCVGTF is responsible for, among other things, investigating violations of federal law committed by criminal street gangs, the Mexican Mafia, and other violent criminal organizations in Orange County. Prior to this assignment with the FBI, I was a SAPD Police Officer and have been so employed for approximately 20 years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an FBI TFO, I have conducted and participated in numerous investigations of criminal activity, specifically including narcotics trafficking and violent offenses committed by street gangs. Since joining the OCVGTF in 2010, I have specialized in investigations of the Mexican Mafia and its subordinate gangs in

Orange County.  As a part of these investigations, I have also learned about the drug trafficking organizations that supply street gangs with illegal narcotics.

## II. PURPOSE OF AFFIDAVIT

4.  This affidavit is made in support of a criminal complaint against and arrest warrant for GERALD ADAM ROYSTER ("ROYSTER") for a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition).

5.  The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

6.  As part of a theft investigation, Newport Beach Police Department ("NBPD") detectives surveilled and conducted a stop of a black BMW in Costa Mesa, California.  As NBPD detectives approached the vehicle, one office observed the driver, later identified as ROYSTER, manipulating something on his right side,

where it appeared that ROYSTER was pushing something down with his right hand in an attempt to conceal the item.

7.   ROYSTER and his passengers were detained pursuant to the theft investigation.  A records check of ROYSTER determined that he was on active parole and subject to search and seizure conditions.  During a subsequent search of the vehicle, the detectives found two firearms -- a loaded Glock, model 42, .380 caliber handgun, bearing serial number ACUP267, and an unmarked 9mm handgun – and additional ammunition.  The Glock was found wedged between the driver's seat and the center console, where an NBPD detective had observed ROYSTER pushing something down.

8.   ROYSTER was detained and not handcuffed at the scene. Before speaking to ROYSTER, an NBPD Detective informed ROYSTER that he was not under arrest and only being detained.  During their conversation, ROYSTER admitted that the firearms and ammunition found in the BMW belonged to him.  Record checks identified ROYSTER as a convicted felon.  An FBI analysis later concluded that the Glock firearm and ammunition seized from ROYSTER had traveled in interstate commerce.

### IV. STATEMENT OF PROBABLE CAUSE

**A.   December 1, 2021 Arrest of ROYSTER**

9.   On November 30, 2021, at approximately 9:06 p.m., NBPD dispatch received a call for service in reference to a suspicious vehicle with a car alarm in the area of 242 Marsala, Newport Beach, California.  Upon their arrival, NBPD officers located the vehicle, which was described as a black Toyota

4Runner bearing California license plate number 6VHY495. The officers contacted the owner of the vehicle and discovered that the vehicle had been stolen. The victim informed the officers that he had parked his vehicle in the area of 1200 Bison Avenue, Newport Beach, earlier in the evening at 4:30 p.m. The victim came to the location where his vehicle was found and identified for the officers numerous items missing from his car, including tools, electronics, electronic cords, and business cards.

    10. Approximately two hours prior to receiving the call regarding the stolen Toyota 4Runner, NBPD officers conducted a traffic stop on a black BMW 740i, bearing California license plate number 8PNJ171. A total of three individuals were in the vehicle. The driver, identified as Timothy Richards, was found to be on probation subject to search and seizure conditions. During a subsequent search of the BMW, NBPD officers found narcotics and narcotic paraphernalia. NBPD Officer J. Surber observed numerous other items in the vehicle, including tools, electronics and jumper cables. At the time, the officers were unable to determine if these items were stolen. As a result of the search, Richards and one of the passengers were arrested for narcotic and warrant related violations. The third passenger in the vehicle, identified as Luna Riekeman, was released at the scene and given possession of the vehicle and the items inside of it.

    11. On December 1, 2021, NBPD Officer A. Daymude, who was partnered with Officer Surber the previous evening, called NBPD Detective D. Spenser at approximately 3:00 p.m. Officer Daymude

advised Detective Spenser that the victim of the stolen Toyota 4Runner had called to inform NBPD that his Apple AirPod Pros were "pinging," or geolocating, in the area of 2640 North Lakewood Boulevard, Long Beach, California.  Detective Spenser spoke with the victim, who provided a detailed list of the property stolen from his vehicle and a map of the area where his Apple AirPod Pros were pinging.  Detective Spenser discovered that the area of the "pings" were in close proximity to the Staybridge Suites Hotel, located at 2680 North Lakewood Boulevard.  NBPD detectives responded to the hotel and located the same black BMW from the previous evening's traffic stop.  At about 9:10 p.m., NBPD detectives maintained surveillance on the BMW as it left the area of the hotel and drove to Costa Mesa, California.  The vehicle was stopped by NBPD detectives in a shopping center located near 2701 Harbor Boulevard in Costa Mesa.

    12.  NBPD Detective S. Esswein approached the vehicle from the driver's side and observed the driver, later identified as ROYSTER, manipulating something near where the driver's seat abuts against the center console.  Detective Esswein could see ROYSTER pushing down with his right hand, possibly in an effort to conceal contraband.  After ROYSTER removed his hands from that area of the driver's seat, Detective Esswein noticed that ROYSTER continued to look down to his right as if to make sure the item was out of view.  When asked by Detective Esswein, ROYSTER denied being on probation or parole.  A records check conducted later in the investigation showed that ROYSTER was on

parole for narcotic sales. NBPD Detective M. Fasano contacted the passenger, identified as Justin Pedersen, who informed Detective Fasano that he was on parole. An additional passenger, Noah Roberts, was seated in the rear passenger compartment of the vehicle.

13. Detectives Esswein and Fasano removed ROYSTER, Pedersen and Roberts from the vehicle. Pursuant to ROYSTER and Pedersen's active parole status and the ongoing stolen property investigation, NBPD Detective E. Geoffroy conducted a search of the vehicle. During the search, Detective Geoffrey located a brown leather Louis Vuitton fanny pack on top of a white blanket on the left rear passenger seat. Detective Geoffroy opened the fanny pack and found a black, 9mm semi-automatic handgun loaded with a total of eleven rounds of MXT 9x19 ammunition. The firearm did not have any markings identifying the weapon's manufacturer, model or serial number. Based on my training and experience, I know that these unmarked firearms are commonly referred to as "ghost guns."

14. Detective Geoffroy continued his search and found a second handgun concealed between the front driver's seat and the center console, in the area where Detective Esswein had initially observed ROYSTER manipulating something with his right hand. The firearm was identified as a black Glock, model 42, .380 Caliber handgun bearing serial number ACUP267. The handgun also had a rail mounted Streamlight TLR-6 combination white flashlight with visible red (laser) dot light. Detective Geoffroy ran a records check on the Glock's serial number but

did not find a record on file. The magazine inside the Glock's magazine well was loaded with six rounds of .380 caliber ammunition. Detective Geoffroy also located a small bag containing eight rounds of .22 caliber ammunition.

15. Detective Spenser informed ROYSTER, who was not handcuffed at the time, that he was not under arrest and that he was only being detained. When asked about the vehicle, ROYSTER stated that he got the vehicle from "Luna". ROYSTER initially denied any knowledge of the guns in the vehicle. When Detective Spenser asked ROYSTER about Detective Esswein's observation that ROYSTER shoved an object between the car's seat and center console, ROYSTER responded, "Why would I say anything? It can be used against me in court." ROYSTER then admitted that the firearm found wedged between the driver's seat and the center console belonged to him. When asked to describe the firearm, ROYSTER stated that it was a black Glock, .380 caliber. Detective Spenser also asked ROYSTER about the firearm that was found by Detective Geoffroy in the Louis Vuitton fanny pack. ROYSTER again initially denied ownership before admitting that the other firearm also belonged to him. ROYSTER described the gun in the fanny pack as a Glock, 9mm Caliber, with a black magazine. While this second firearm did not have any markings identifying the manufacturer or model, its appearance is similar to most Glock handguns. ROYSTER also admitted ownership of the small bag containing the eight .22 caliber rounds of ammunition. ROYSTER stated the .22 caliber rounds were given to him, but he does not have a gun to shoot that caliber.

16. ROYSTER stated he got the guns on the street for free and carries them because of "PC's." Based on my training and experience, I know that "PC" is a common prison term for "Protective Custody," which is a type of imprisonment designed to protect an inmate from other prisoners. Individuals identified as informants, dropouts from a gang, and those convicted of sexual crimes against women and children are often placed in Protective Custody. When asked to elaborate, ROYSTER told Detective Spenser, "you know, NLR dropouts," which, based on my training and experience, I understand to be a reference to members of the Nazi Low Riders gang who have dropped out of the gang. The Nazi Low Riders are a Neo-Nazi prison and street gang found primarily in California and Texas. ROYSTER also mentioned that he had been shot at and carries the firearm for protection.

17. Detective Spenser also spoke to the other occupants of the vehicle, identified as Justin Pedersen and Noah Roberts. Both Roberts and Pedersen stated that they were hanging out with one another when Pedersen needed to go to the hospital for COVID-19 related treatment. Pedersen needed a ride and arranged for ROYSTER to pick them up. Both Pedersen and Roberts denied having any bags or fanny packs, and both denied knowledge of any firearms in the vehicle.

B. **ROYSTER's Criminal History**

18. I have reviewed ROYSTER's criminal history for felony convictions. Based on my review of those records, I have learned that ROYSTER was convicted of the following felonies on or about the dates specified below:

a. On June 22, 2001, for possession of a controlled substance for sales (methamphetamine), in violation of Health and Safety Code ("HS") § 11378, in Orange County Superior Court, Case No. 01SF0308, for which he was sentenced to 36 months of probation and 365 days in jail;

b. On November 7, 2003, for transportation of a controlled substance in violation of HS § 11379(a), in Orange County Superior Court, Case No. 02SF0414, for which he was sentenced to 4 years in prison;

c. On June 2, 2005, for possession of a controlled substance for sales, in violation of HS § 11351, in Orange County Superior Court, Case No. 05NF1805, for which he was sentenced to 2 years in prison;

d. On August 18, 2006, for possession of a controlled substance for sales (methamphetamine), in violation of HS § 11378; transportation of a controlled substance, in violation of HS § 11379(a); and evading a peace officer, in violation of California Vehicle Code § 2800.2, Orange County Superior Court, Case No. 06HF1363, for which he was sentenced to 4 years and 8 months in prison;

e. On August 25, 2009, for burglary, in violation of California Penal Code ("CPC") § 459-460(b), in Orange County Superior Court, Case No. 09HF0615, for which he was sentenced to 4 years in prison;

    f. On August 3, 2011, for burglary, in violation of CPC § 459-460(b), in Orange County Superior Court, Case No. 11CF1903, for which he was sentenced to 4 years in prison;

    g. On May 2, 2013, for possession of a stolen vehicle, in violation of CPC § 496d(a); accessing account information without permission, in violation of CPC § 484e(d); and receiving/possession of stolen property in violation of CPC § 496(a) in Orange County Superior Court, Case No. 13WF0219, for which he was sentenced to 4 years in prison;

    h. On March 18, 2015, for being a felon in possession of a firearm, in violation of CPC § 29800(a)(1), in Orange County Superior Court, Case No. 15CF0390, for which he was sentenced to 56 months in prison;

    i. On April 13, 2018, for possession of controlled substance for sales, in violation of HS § 11352(a); transportation of a controlled substance, in violation of HS § 11379(a); possession of controlled substance for sale (methamphetamine), in violation of HS § 11378; and possession of narcotics for sale HS § 11351, in Orange County Superior Court, Case No. 17NF1172, for which he was sentenced to 3 years of probation and 5 years in jail;

    j. On May 18, 2020, for transportation of a controlled substance, in violation of HS § 11379(a), in Orange

county Superior Court, Case No. 18HF1341, for which he was sentenced to 3 years in prison;

  k. On May 18, 2020, for bringing a controlled substance into prison, in violation of CPC § 4573, in Orange County Superior Court, Case No. 18CF3545, for which he was sentenced to 3 years in prison; and

  l. On May 18, 2020, for possession of a controlled substance for sale, in violation of HS § 11351; transporting a controlled substance, in violation of HS § 11352 (a); possession of a controlled substance for sale (methamphetamine), in violation of HS § 11378; and transportation of a controlled substance (methamphetamine), in violation of HS § 11379(a), in Orange County Superior Court, Case No. 18NF2925, for which he was sentenced to 3 years prison.

  **C.** **Interstate Nexus Analysis**

 19. On December 17, 2021, I contacted FBI Special Agent ("SA") Trevor Twitchell, regarding the Glock firearm and ammunition seized as evidence by NBPD on December 1, 2021. On December 17, 2021, SA Twitchell examined the firearm and ammunition for purposes of determining whether the firearm and ammunition had traveled in interstate or foreign commerce. SA Twitchell identified the seized firearm and ammunition as the following:

  a. A Glock, model 42, .380 caliber semi-automatic handgun bearing serial number ACUP267. SA Twitchell concluded

that the handgun was a firearm as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3), was manufactured in Austria or Georgia, and had to have moved through either interstate or foreign commerce given that it was recovered in California.

    b. Eleven rounds of 9mm ammunition, stamped "MXT 9x19 20-4." SA Twitchell concluded that the rounds were ammunition as defined in Title 18, United States Code, Chapter 44, Section 921(a)(17)(A), were manufactured internationally, and had to have moved through foreign commerce given that they were recovered in California.

    c. Three rounds of .380 caliber ammunition, stamped "WIN 380 Auto." SA Twitchell determined that the rounds were ammunition as defined in Title 18, United States Code, Chapter 44, Section 921(a)(17)(A), were manufactured in Mississippi, Illinois, Missouri or internationally, and had to have moved through interstate or foreign commerce given that they were recovered in California.

    d. Three rounds of .380 caliber ammunition, stamped "PPU 380 Auto." SA Twitchell determined that the rounds were ammunition as defined in Title 18, United States Code, Chapter 44, Section 921(a)(17)(A), were manufactured internationally, and had to have moved through foreign commerce given that they were recovered in California.

    e. Five rounds of .22 caliber ammunition, stamped "Super X." SA Twitchell determined that the rounds were ammunition as defined in Title 18, United States Code, Chapter

44, Section 921(a)(17)(A), were manufactured in Mississippi, Illinois, Missouri or internationally, and had to have moved through interstate or foreign commerce given that they were recovered in California.

      f.   Three rounds of .22 caliber ammunition, stamped "REM." SA Twitchell determined that the rounds were ammunition as defined in Title 18, United States Code, Chapter 44, Section 921(a)(17)(A), were manufactured in Arkansas or Connecticut, and had to have moved through interstate commerce given that they were recovered in California.

//

//

//

## V. CONCLUSION

20. For all the reasons described above, there is probable cause to believe that ROYSTER has committed a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm and ammunition).

/s/
FARSHID HASHEMPOUR
Task Force Officer, FBI

Attested to by the applicant
in accordance with the
requirements of Fed. R. Crim.
P. 4.1 by telephone on this
21st day of December, 2021.

**DOUGLAS F. McCORMICK**
HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE